## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard Lee Oprenchak, Jr., <br><br> Plaintiff, <br><br> v. <br><br> American Family Mutual Insurance Company, <br> and its affiliates and subsidiaries, <br><br> James R. Andersen, <br> Branch Manager, individual, <br><br> Don Johnson, <br> State Operations Manager, individual, <br><br> and <br><br> Jane Spindler, <br> AVP East Region, individual, <br><br> Defendants. | File No. 11-cv-00425 (PJS/TNL) <br><br><br><br><br> **ORDER &** <br> **REPORT &** <br> **RECOMMENDATION** |

Richard Lee Oprenchak, Jr., 10215 Thirty-Second Avenue North, Plymouth, MN 55441 (pro se); and

David P. Jendrzejek, Marcy R. Frost, and Taylor D. Tarvestad-Sztainer, Moss & Barnett, PA, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402 (for Defendants).

This matter is before the Court, Magistrate Judge Tony N. Leung, for a report and recommendation to the United States District Court Judge on Defendants' Amended

Motion to Dismiss the Complaint (Docket No. 12; *see also* Docket No. 8[1]).   *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.1.

Based upon the record, memoranda, and files herein, **IT IS HEREBY RECOMMENDED** that Defendants' Amended Motion to Dismiss the Complaint (Docket No. 12; *see also* Docket No. 8) be **GRANTED IN PART** and **DENIED IN PART**, and this matter be **DISMISSED WITHOUT PREJUDICE**.

Further, **IT IS HEREBY ORDERED** that that Defendants' request for attorneys' fees (*see* Docket Nos. 25 at 7, 26 at 1) is **DENIED**.

## I.[2]

This case arises out of Plaintiff Robert Lee Oprenchak, Jr.'s termination of employment with Defendant American Family Mutual Insurance Company ("American Family").   (*See* Docket No. 3, ¶ 2.1.1.)   American Family is a Wisconsin corporation. (Docket No. 3, ¶ 1.2).   Defendants James R. Andersen, Don Johnson, and Jane Spindler are employed by American Family and work and reside in Wisconsin.   (Docket Nos. 3, ¶ 1.3-.5, 15, ¶¶ 1-2, 17, ¶¶ 1-2, 18, ¶¶ 1-3.)

In April 2002, Plaintiff was hired by American Family to work as a property claim specialist.   (Docket No. 3, ¶ 2.1.1.)   In February 2009, American Family informed Plaintiff that he would need to relocate in order to retain his employment and "entered into a contract to pay relocation expenses" for Plaintiff to relocate from Plymouth,

---

[1] "Upon receipt of the Court's order referring all dispositive and non-dispositive motions to Magistrate Judge Tony N. Leung, Defendants filed an amended Notice of Hearing on its Motion containing the correct location for the motion and the correct Judicial officer."  (Docket No. 14 at 5 n.3 (citation omitted).)

[2] "In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true." *Ahle v. Veracity Research Co.*, 641 F. Supp.2d 857, 859 n.1 (D. Minn. 2009) (citing *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir.1994)).

Minnesota, to Madison, Wisconsin.  (Docket No. 3, ¶¶ 2.1.3-.4.)  There is no indication that Plaintiff ever moved to Wisconsin,[3] and approximately two months later, in April 2009, American Family transferred Plaintiff's reporting responsibilities from its Eden Prairie, Minnesota office to its office in Madison, Wisconsin.  (Docket No. 3, ¶ 2.1.5.)

## A.  Positive Discipline Program

In September 2009, branch manager Andersen instituted a Positive Discipline Program ("the Program") for Plaintiff without any prior discussion of Plaintiff's performance.  (Docket No. 3, ¶¶ 2.2.1-.2; *see also* Docket No. 3, ¶ 2.2.5.)  Plaintiff was placed in the Program after "the review of fifteen files (which represented less than ½ of 1% and had a confidence factor of about ~20%) received by the Madison Branch Property Desk Unit since it was established in May 2009."  (Docket No. 3, ¶ 2.2.6.)  Plaintiff did not have any prior corrective actions.  (Docket No. 3, ¶ 2.2.5.)  Further, American Family had terminated the Program in October 2007, and the Program was neither part of American Family's human-resources policies nor discussed in any guidelines published by American Family.  (Docket No. 3, ¶¶ 2.2.3-.4.)

## B.  Written Warning

In September 2009, Andersen gave Plaintiff a written warning under the Program for his work on Claim Number 00321-095516 ("Claim '516").  (Docket No. 3, ¶¶ 2.2.8, 2.3.13.)  "[T]he last significant activity on [Claim '516]" by Plaintiff was in 2008. (Docket No. 3, ¶ 2.3.14.)

---

[3] At the hearing, Plaintiff stated that he has been a resident of Plymouth since 1998.

### 1.  Claim '516

American Family received Claim '516 in January 2008.  (Docket No. 3, ¶ 2.3.1.)  Claim '516 was originally assigned to an office in Illinois, but was subsequently reassigned to Plaintiff's desk unit.  (Docket No. 3, ¶ 2.3.2.)  Plaintiff assigned Claim '516 to independent adjuster Eagle Adjusting Service ("Eagle Adjusting"), the only firm approved by American Family.  (Docket No. 3, ¶¶ 2.3.3-.4, 2.2.6.)

In March 2008, Plaintiff received an e-mail from American Family's legal department "recommending that the contents portion of [Claim '516] be denied" due to the homeowner's lack of cooperation.  (Docket No. 3, ¶ 2.3.11.)  Claim '516's homeowner delayed property inspections until April 2008.  (Docket No. 3, ¶ 2.3.5.)  In mid-April 2008, Plaintiff directed an internal American Family adjuster to tell Eagle Adjusting that American Family was unhappy with Eagle Adjusting's work on Claim '516, and directed Eagle Adjusting "to complete an estimate" and return it to American Family on or before May 1, 2008, otherwise Claim '516 would be reassigned to another independent adjuster.  (Docket No. 3, ¶ 2.3.6.)  Eagle Adjusting failed to provide an estimate to American Family.  (Docket No. 3, ¶ 2.3.7.)

Claim '516 was subsequently reassigned to independent adjuster Quality Adjusting, who was approved by American Family in April 2008.  (Docket No. 3, ¶ 2.3.7.)  Quality Adjusting provided an estimate to American Family in mid-May 2008, indicating "that two contractors could repair the structure for the scope of [American Family's] estimate, excluding any unseen damage."  (Docket No. 3, ¶ 2.3.8.)

Approval authority for Claim '516 was requested in May 2008.  (Docket No. 3, ¶ 2.3.9.)  The request was forwarded to another American Family employee who did not provide authority until approximately a month later, in contravention of American Family's guidelines.  (Docket No. 3, ¶¶ 2.3.9, 2.3.17.)  Quality Adjusting provided status reports to American Family "on 60-80 day intervals" from July through December 2008. (Docket No. 3, ¶ 2.3.10.)  In 2009, Claim '516's homeowner sold the property and the new owner repaired the structural damage for less than American Family's estimate. (Docket No. 3, ¶ 2.3.12.)

### 2.  Plaintiff's 2008 Performance Assessment

For his 2008 performance assessment, Plaintiff was rated "On Target," which included all of Plaintiff's work on Claim '516.  (Docket No. 3, ¶¶ 2.2.11, 2.3.16.)

### C.  Action Plan

"American Family [also] entered into an Action Plan contract with Plaintiff, which was an agreed[-]upon plan to address all alleged performance deficiencies" in September 2009.  (Docket No. 3, ¶ 2.2.12.)  As part of the performance-improvement process, the guidelines published by American Family's human-resources department provided for "regular and ongoing feedback on improvements and further deficiencies."  (Docket No. 3, ¶ 2.2.7.)  In October 2009, Andersen told Plaintiff that he was "on track."  (Docket No. 3, ¶ 2.2.7.)  In mid-October 2009, "Plaintiff sent a lengthy e[-]mail regarding the alleged performance deficiencies to Defendant[s] . . . Johnson and . . . Spindler."  (Docket No. 3, ¶ 2.2.14.)  Johnson subsequently shared Plaintiff's e-mail with Andersen.  (Docket No. 3, ¶ 2.2.14.)

### D.  2009 Performance Assessment

In February 2010, Andersen completed Plaintiff's 2009 performance assessment. (Docket No. 3, ¶ 2.4.1.)  Andersen told Plaintiff that "he would receive a lump sum increase of $500 for performance for 2009."  (Docket No. 3, ¶ 2.4.1.)  However, later that month, Andersen "lowered . . . Plaintiff's 2009 [p]erformance [a]ssessment based on activity that occurred in 2008[,] which was properly addressed in Plaintiff's 2008 [p]erformance [a]ssessment."  (Docket No. 3, ¶ 2.4.2.)  This performance assessment was subsequently approved by Johnson.  (Docket No. 3, ¶ 2.4.3.)

### E.  Claim '286

In April 2010, Andersen discussed Claim 321-160-286 ("Claim '286") with Plaintiff.  (Docket No. 3, ¶ 2.5.1.)  Andersen "requested Plaintiff to perform activities that were against the law" and Plaintiff refused to do so.   (Docket No. 3, ¶¶ 2.5.1-.3.) Andersen responded that he did not fully understand Plaintiff's explanation and advised Plaintiff to take another course of action.  (Docket No. 3, ¶ 2.5.2.)  Plaintiff again refused. (Docket No. 3, ¶¶ 2.5.2-.3.)

### F.  Property Desk Unit Review & Termination

In May 2010, Andersen commenced a review of the Madison branch's Property Desk Unit.  (Docket No. 3, ¶ 2.6.1.)  The review was assigned to an administrator who then examined 100 claims received by the Property Desk Unit.  (Docket No. 3, ¶¶ 2.6.1, .3.)  The sample size "represented less than 1% of the claims" received by the Property Desk Unit in the past twelve months, "was not statistically valid[,] and had a confidence level of less than 5%."  (Docket No. 3, ¶ 2.6.1.)  "Andersen did not let Plaintiff review

and form a rebuttal" to the review.  (Docket No. 3, ¶ 2.6.5.)  Plaintiff was ultimately fired

on May 20, 2010, due to unsatisfactory performance.  (Docket No. 3, ¶ 2.7.1.

## II.

By Amended Complaint, Plaintiff brings the present action for unlawful

termination based on retaliation and breach of contract.  (*See* Docket No. 3, ¶¶ 2.7.2, 4.1-

.4, 6.1-.7.)  Plaintiff also asserts claims of fraud, negligence, slander, libel, and emotional

distress.  (*See* Docket No. 3, ¶¶ 2.7.3, 3.1-.95.1-.8, 7.1-.4, 8.1-.4, 9.1-.4.)

Defendants have collectively moved for dismissal of the Amended Complaint,

asserting that (1) this Court lacks personal jurisdiction over Andersen, Johnson, and

Spindler; (2) there has been insufficient service of process as to all Defendants; and (3)

Plaintiff has failed to state a claim for which relief can be granted.  (Docket No. 12; *see*

*also* Docket No. 8.)  Plaintiff did not file a response to American Family's motion.

A hearing was held on December 7, 2011.  (Docket No. 20.)  Plaintiff appeared

pro se and David P. Jendrzejek appeared on behalf of Defendants.  (Docket No. 20.)

> During argument, Plaintiff told the Court that he had served
> the Amended Complaint on Defendants' agent for service of
> process through the state Department of Commerce. Plaintiff
> then produced the certified receipt and a receipt for postage
> paid relating to service on the agent. Plaintiff showed these
> documents to Defendants. Defendants were not aware of any
> attempted service on an agent.

(Docket No. 21 at 1-2.)  While the purported service documents had not been filed, this

Court concluded that

> the interests of justice would be best served by both allowing
> Plaintiff to file the purported service documents and
> permitting additional briefing on the sufficiency of service

> prior to issuing its report and recommendation on
> Defendants' Amended Motion to Dismiss the Complaint
> (Docket No. 12; *see also* Docket No. 8).   Plaintiff [also]
> acknowledged his error on the record and agreed to pay
> reasonable costs and expenses, as determined by the Court,
> for the time spent by Defendants in responding to this late
> development.

(Docket No. 21 at 2-3.)

This Court ordered (1) Plaintiff to provide Defendants copies of and file the service documents on or before December 9, 2011, and (2) Defendants to file a supplemental memorandum on the service issue on or before December 16, 2011. (Docket No. 21 at 3.)   This Court also gave Plaintiff the option to file a response to Defendants' supplemental memorandum.   (Docket No. 21 at 3.)

On December 8, 2011, Plaintiff filed both the service documents (*see* Docket Nos. 23, 23-1) and a memorandum entitled "Plaintiff's Support Employment Not Being At Will" on December 8, 2011 (Docket No. 22; *see also* Docket No. 22-1).   On December 10, 2011, Plaintiff filed a memorandum entitled "Supporting Memo for Proper Service, by the Plaintiff" (Docket No. 24; *see also* Docket Nos. 24-1-3).   Defendants filed their supplemental memorandum on December 16, 2011, and filed another supporting affidavit on December 19.   (*See* Docket Nos. 25-28.)   On December 24, 2011, Plaintiff filed another memorandum entitled "Supplemental Memorandum in Opposition to the Defendants['] Request to Dismiss the Complaint."   (Docket No. 29.)   While Plaintiff's December 24th memorandum (Docket No. 29) and Defendants' December 19th affidavit (Docket No. 28) were submitted outside of the deadlines set forth in this Court's Order,

these documents both touch on whether service of process was perfected in this matter and so the Court has considered them in the interests of completeness.[4]

## III.

Defendants Andersen, Johnson, and Spindler have moved for dismissal of the all claims against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (*See* Docket Nos. 10 at 1, 14 at 5-16; *see also* Docket No. 8 at 1.)  Defendants Andersen, Johnson, and Spindler argue that (1) they are all residents of the Wisconsin; (2) the Amended Complaint does not establish or even allege a basis for which this Court may exercise personal jurisdiction over them; and (3) none of them have the requisite "'continuous and systematic' contacts with Minnesota sufficient to subject them to its general jurisdiction."  (*See* Docket No. 14 at 9-16.)

### A.  Standard of Review

Plaintiff has the burden to show the existence of personal jurisdiction.  *Greenbelt Res. Corp. v. Redwood Consultants, LLC*, 627 F. Supp.2d 1018, 1023 (D. Minn. 2008).

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion.

---

[4] Because this Court does not reach Defendants' arguments under Fed. R. Civ. P. 12(b)(6), *see infra* Part V, the Court has not considered Plaintiff's December 8th memorandum concerning the nature of his employment.  (*See* Docket Nos. 22, 22-1.)

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (quotations and citations omitted); *see also Greenbelt Res. Corp.*, 627 F. Supp.2d at 1023 (stating "court may consider matters outside the pleadings" when determining whether personal jurisdiction exists).  "For purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, [this] [C]ourt must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the Plaintiff's favor." *Greenbelt Res. Corp.*, 627 F. Supp.2d at 1023.

As a general matter, when a defendant moves for dismissal due to lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a federal court "must determine that personal jurisdiction exists under the forum state's long-arm statute and that the exercise of personal jurisdiction is consistent with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).  Section 543.19 of the Minnesota Statutes governs personal jurisdiction over nonresident individuals.  *See* Minn. Stat. § 543.19. "Because Minnesota's long-arm statute, Minn. Stat. § 543.19, reaches as far as the Constitution allows," this Court need only consider whether an exercise of personal jurisdiction over Andersen, Johnson, and Spindler comports with due process.  *Pope v. Elabo GmbH*, 588 F. Supp.2d 1008, 1015 (D. Minn. 2008); *see also Wells Dairy, Inc.*, 607 F.3d at 518 (limiting scope of inquiry to whether exercise of personal jurisdiction is consistent with due process when forum state's long-arm statute expands state's jurisdiction to fullest extent of the Constitution); *accord Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) ("Minnesota's long-arm statute confers jurisdiction to the fullest extent permitted by the Due Process Clause.").

"Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with the traditional notions of fair play and substantial justice." *Wells Dairy, Inc.*, 607 F.3d at 518 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there . . . ." *Coen*, 509 F.3d at 905 (quotation omitted). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Greenbelt Res. Corp.*, 627 F. Supp.2d at 1024 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Eighth Circuit has

> established a five-part test for measuring a defendant's contacts with the forum state: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Wells Dairy, Inc.*, 607 F.3d at 518 (quoting *Bell Paper Box Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)); *see also Pope*, 588 F. Supp.2d at 1017-18 (observing first two factors of Eighth-Circuit test go to the existence of minimum contacts while fourth and fifth factors "go to the reasonableness of exercising jurisdiction"). "Factors one through three are primary." *Coen*, 509 F.3d at 905.

11

Further, "[p]ersonal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor—relation of the cause of action to the contacts—distinguishes between the two." *Wells Dairy, Inc.*, 607 F.3d at 518. "Specific jurisdiction refers to jurisdiction over *causes of action arising from or related to a defendant's actions with the forum state*, while general jurisdiction refers to the power of a state to adjudicate *any cause of action involving a particular defendant*, regardless of where the cause of action arose." *Coen*, 509 F.3d at 905 (emphasis added) (quotation omitted).

## B.  General Jurisdiction

"General jurisdiction exists where the contacts between the defendant and the forum state are continuous and systematic even if there is no relationship between the contacts and the cause of action." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2008) (quotation omitted).  Plaintiff's Amended Complaint states that "[a]t all times material," Andersen, Johnson, and Spindler "work[ed] in Dane County, WI and [were] employed by American Family."  (Docket No. 3, ¶¶ 1.3-.5.)  There are no allegations as to how any of these defendants are connected to Minnesota.  While this Court applies the customary liberal construction to the Amended Complaint given Plaintiff's pro se status, *see Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), the Amended Complaint does not provide any allegations as to the nature, quality, and quantity of Andersen, Johnson, and Spindler's contacts with Minnesota or allege *any contacts* between any of these defendants and Minnesota.  As a result, the Amended Complaint is devoid of any factual allegations that Andersen, Johnson, and Spindler had any continuous or systematic

contacts with Minnesota to support this Court's exercise of general jurisdiction over these defendants.

Additionally, the affidavits submitted by Andersen, Johnson, and Spindler in support of the motion to dismiss further show the lack of any continuous and systematic contacts with Minnesota by these defendants. Andersen and Johnson do not reside, work, own property, or conduct business in Minnesota. (Docket Nos. 15, ¶¶ 2, 4, 17, ¶¶ 2, 4.) Neither Andersen or Johnson ever met with Plaintiff in Minnesota. (Docket Nos. 15, ¶ 5, 17, ¶.) While Andersen has relatives in Minnesota whom he visits, these visits were personal and not for conducting American Family's business. (Docket No. 15, ¶¶ 4-5.) *See Coen*, 509 F.3d at 905 n.5 (personal visits to forum state were not relevant contacts). Beyond visits to relatives, Andersen can only recall being present in Minnesota once for job interview in 2003. (Docket No. 15, ¶ 5.) Johnson states that he has transferred flights in Minnesota, and otherwise has only been to Minnesota once to attend an American Family meeting in 2009, which was unrelated to Plaintiff. (Docket No. 17, ¶ 5.) These activities do not constitute purposeful availment. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003) (stating a nonresident "[d]efendant's contacts must be more than 'random, fortuitous, or attenuated'" (quoting *Burger King Corp.*, 471 U.S. at 475)).

As for Spindler, she worked at American Family's offices in Eden Prairie, Minnesota, between 2001 and 2006. (Docket No. 18, ¶ 3.) During this time, Plaintiff was one of her "indirect reports." (Docket No. 18, ¶ 3.) In December 2006, Spindler relocated to American Family's office in Madison, Wisconsin. (Docket No. 18, ¶ 3.)

Spindler has resided and worked in Wisconsin ever since.  (Docket No. 18, ¶ 3.)  Spindler

has had no direct supervisory responsibilities over Plaintiff since her move to Wisconsin.

(Docket No. 18, ¶ 3.)  Spindler does not have any business interests in Minnesota, has not

owned property in Minnesota since 2007, and has had no connections with Minnesota

since 2008 other than with her relatives.  (Docket No. 18, ¶ 5.)  Aside from one visit to

American Family's office in Rochester, Minnesota, Spindler's visits to Minnesota were

for purposes of visiting her relatives.  (Docket No. 18, ¶¶ 5-6.)

While Spindler has more contacts with Minnesota than Andersen and Johnson,

these contacts ended no later than 2008 and the bulk of the American-Family-related

contacts ended in 2006.  Plaintiff's lawsuit was filed in 2011 and concerns events that

occurred in 2009 and 2010.  "Minimum contacts must exist either at the time the cause of

action arose, the time the suit is filed, or within a reasonable period of time immediately

prior to the filing of the lawsuit."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558,

562 (8th Cir. 2003).  Plaintiff was terminated in 2010, approximately three and one-half

years after Spindler left Minnesota.  As Spindler argues, "[a]t all times material to

Plaintiff's claims, she has had no business contacts with Minnesota, other than visiting

relatives living in the state, and once visiting American Family's Rochester claims office

prior to its closing . . . ."  (Docket No. 14 at 13-14.)  Thus, like Andersen and Johnson,

there is no evidence to suggest that Spindler had continuous and systematic contacts with

Minnesota such that she could expect to be haled before a Minnesota court.

### C. Specific Jurisdiction

In contrast to general jurisdiction, specific jurisdiction can only be found when the controversy arises out of or is related to a defendant's contacts with the forum state. *Johnson*, 444 F.3d at 956. As applied in this case, specific jurisdiction can only be found if the adverse employment actions challenged by Plaintiff arose out of or are related to Andersen, Johnson, and Spindler's contacts with Minnesota.

At the hearing, Plaintiff stated that he has been a resident of Minnesota since 1998 and, between 2009 and 2010, he worked as a remote employee for American Family, telecommuting via e-mail and telephone. These statements, when considered along with Plaintiff's statements that he has lived in Minnesota since at least 1998 and American Family told him he would need to relocate to Wisconsin, can only reasonably be reconciled to mean that, at all times relevant, Plaintiff has resided and worked in Minnesota. *See Stone*, 364 F.3d at 914 ("pro se complaints are to be construed liberally").

While American Family's decision to continue to employ Plaintiff as a remote employee in Minnesota suggests a finding of sufficient contacts to warrant specific jurisdiction over the corporate defendant, *see, e.g.*, *Digi-Tel Holdings, Inc. v. Protec Telecomm. Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) ("Jurisdiction is proper where the contacts proximately result from actions by the defendant itself that create a 'substantial connection' with the forum State."), this Court need not reach the issue as American Family has not challenged this Court's exercise of personal jurisdiction. As officers and employees of American Family, however, Andersen, Johnson, and Spindler's contacts

with Minnesota "are not to be judged according to the corporation's activities there; rather, each defendant's contacts with the forum state must be assessed individually." *Minn. Mining & Mfg. Co. v. Raugh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996).

With respect to the nature and quality of the contacts by Andersen, Johnson, and Spindler, Plaintiff alleges that Andersen sent him an e-mail in October 2009 concerning his adherence to the Action Plan.  (Docket No. 3, ¶ 2.2.13.)  This represents one e-mail contact with Minnesota by Andersen.  The Amended Complaint contains additional allegations as to other written and oral communications by Andersen with Plaintiff (*see, e.g.*, Docket No. 3, ¶¶ 2.2.7, 2.3.13, 2.4.1-.2, 2.5.1-.2), but does not specify how Andersen made contact.  Thus, this Court is unable to evaluate the nature and quality of any resultant contacts.  While Plaintiff alleges that he sent an e-mail to Johnson and Spindler concerning the purported performance deficiencies (Docket No. 3, ¶¶ 2.2.14), these are contacts Plaintiff made with Wisconsin, not contacts Johnson and Spindler had with Minnesota.  There are no additional allegations as to any contacts with Plaintiff made by Johnson or Spindler.

"Letters, e-mails, faxes and telephone contacts may, in conjunction with other contacts, support the exercise of personal jurisdiction, but such contacts alone are insufficient to satisfy due process."  *Greenbelt Res. Corp.*, 627 F. Supp.2d at 1026; *see also Digi-Tel Holdings, Inc.*, 89 F.3d at 523 ("Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction."); *accord Toro Co. v. Advanced Sensor Tech.*, No. 08-248 (DSD/SRN), 2008

16

WL 2564336, at *3 (D. Minn. June 25, 2008) (noting even "relatively large" amounts of electronic communication, without more, does not establish specific jurisdiction). Plaintiff has not alleged any contacts by Andersen, Johnson, and Spindler with Minnesota which demonstrate that any of these defendants purposefully availed him or herself of the privilege of conducting activities in Minnesota, thereby invoking the benefits and protections of Minnesota's laws. *See Coen*, 509 F.3d at 906.  At most, Plaintiff has alleged e-mail, telephone, and written contact with Minnesota by Andersen, but this is not sufficient.  As a result, Plaintiff has not shown that this Court has specific jurisdiction over Andersen, Johnson, or Spindler.

Because Plaintiff has not made a prima facie showing under either the principles of general jurisdiction or specific jurisdiction that this Court has personal jurisdiction over Andersen, Johnson, or Spindler, this Court recommends that that the motion to dismiss be granted with respect to Andersen, Johnson, and Spindler.

## IV.

All defendants have moved for dismissal for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).

> Unless a defendant voluntarily makes an appearance or waives defective service, a federal court is without jurisdiction to render personal judgment against a defendant if service of process is not made in accordance with applicable federal or state statutory requirements.  *This principle remains true despite any actual notice a defendant may have of the lawsuit.*

*Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir. 1982) (emphasis added) (citations omitted); *see also Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993)

17

("If a defendant is improperly served, a federal court lacks jurisdiction over the defendant.").

When a defendant moves for dismissal pursuant to Rule 12(b)(5), "the plaintiff must establish prima facie evidence that there was sufficient . . . service of process." *Hahn v. Bauer*, No. 09-220 (JNE/JJK), 2010 WL 396228, at *6 (D. Minn. Jan. 27, 2010) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1387 (8th Cir. 1995)). Service of process is governed by Fed. R. Civ. P. 4.

### A.  No Waiver

Individuals and corporations have "a duty to avoid unnecessary expenses of serving a summons." Fed. R. Civ. P. 4(d)(1). Accordingly, Rule 4 includes a procedure for requesting a defendant to waive of service of process. *See* Fed. R. Civ. P. 4(d). "However, if the defendant does not waive service, service has not been effected." *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 867-68 (8th Cir. 2000). There is no dispute that Plaintiff requested a waiver of service of process from each defendant and no defendant responded to his request. (*See* Docket No. 14 at 4; Docket No. 23 at 1.) Therefore, Plaintiff is responsible for ensuring that service of process is perfected.

### B.  Service of Process

Plaintiff filed the Amended Complaint on March 30, 2011.[5] (Docket No. 3.) There is no affidavit of service regarding the Amended Complaint. *See* Fed. R. Civ. P. 4(l)(1) (requiring proof of service be made by affidavit absent waiver). On September 14, 2011, this Court notified Plaintiff that more than 120 days had elapsed since the suit

---

[5] Plaintiff did not include his address on the initial complaint and therefore no summons was issued.

was filed without an appearance by a defendant.  (Docket No. 5 at 1.)  Plaintiff was ordered to (1) notify Defendants immediately that they were required to answer or otherwise respond to the Amended Complaint or submit a stipulation for an extension of time to answer or otherwise respond, and (2) file an application for default judgment if Defendants still did not respond.  (Docket No. 5 at 1.)  Plaintiff filed a "Notice to Answer Complaint" on September 27, 2011, but there is no accompanying proof that the notice was served on Defendants.  *See* Fed. R. Civ. P. 5(d)(1) (requiring a certificate of service to be filed within a reasonable time after service).  Defendants assert that dismissal is warranted because Plaintiff has altogether failed to serve Defendants with process. (Docket No. 14 at 5.)

At the hearing, Plaintiff maintained that he had served Defendants with process by means of Defendants' agent for service of process through the Minnesota Department of Commerce.  (Docket No. 21 at 1.)  Plaintiff produced "the certified receipt and receipt for postage paid relating to service on the agent."  (Docket No. 21 at 2.)  In compliance with this Court's order, Plaintiff subsequently filed copies of two certified mail receipts, one addressed to "Dept. of Commerce" and one to "American Family," for mailings made on March 30, 2011; the receipt for postage paid relating to these two mailings; and "Track & Confirm" e-mails from the United States Postal Service regarding a mailing made on February 19, 2011, which was received in Madison, Wisconsin, on February 23, 2011, and the March 30 mailing to "American Family," which arrived in Madison on April 4, 2011.  (Docket No. 23-1 at 1-3.)  Plaintiff contends Defendants were properly served pursuant to Minn. Stat. § 45.028.  (Docket No. 23 at 1.)

### 1.  Service of Process Upon a Foreign Corporation

Under Rule 4, service is permitted on a corporation in manner authorized by the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(1), (h); *see also Fischer v. Mortg. Elec. Registration Sys., Inc.*, No. 09-3506 (PJS/JSM), 2010 WL 3283420, at *2 ("Federal Rule of Civil Procedure 4(e)(1) provides that service in a federal district court may be effected pursuant to the laws of the state in which the court is located.").

American Family is a foreign corporation.  Rule 4.03 of the Minnesota Rules of Civil Procedure provides that service of process shall be made upon a foreign corporation

> by delivering a copy to an officer or managing agent, or *to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, and if the agent is one authorized or designated under statute to receive service any statutory provision for the manner of such service shall be complied with*.

Minn. R. Civ. P. 4.03(c).

### a.  Minn. Stat. § 45.028

Section 45.028 of the Minnesota Statutes allows service of process to be made on the Minnesota Commissioner of Commerce when a nonresident "engages in conduct prohibited or made actionable by chapters 45 to 83, 155A, 309, and 332, and section 326B.802, or any rule or order under those chapters,"[6] and the nonresident does not consent to service of process.  Minn. Stat. § 45.028, subd. 1(a).  The action, however,

---

[6] Generally, these chapters cover the following topics: general powers of the commissioner (45), banking (46-59), insurance (59A-79A), securities and commercial regulations (80-83), cosmetology (155A), social and charitable organizations (309), collection and credit services (332), and residential trades and licensing (326B.802).  *See generally* Minn. Stat. §§ 45-83, 155A, 309, 332, 326B.802

must be based on conduct prohibited by *and* brought under the aforementioned chapters. *Id.* As American Family points out, "Plaintiff has not brought his action under any of those chapters or sections or alleged that Defendants engaged in conduct prohibited or made actionable by them."[7]  (Docket No. 25 at 5; *see* Docket No. 3 at 7-10.)

Moreover, even if Plaintiff's causes of action fell into one or more of the preceding chapters, service of process would still not be effective because Plaintiff did not comply with section 45.028's service-of-process requirements.  Section 45.028 states:

> Service of process under this section may be made by leaving a copy of the process in the office of the commissioner, or by sending a copy of the process to the commissioner by certified mail, *and is not effective unless*: (1) the plaintiff . . . sends notice of the service and a copy of the process by certified mail to the defendant or respondent at the last known address; *and* (2) the plaintiff's affidavit of compliance is filed in the action or proceeding on or before the return day of the process, if any, or within further time as the court allows.

Minn. Stat. § 45.028, subd. 2 (emphasis added).  In essence, section 45.028 requires Plaintiff to do three things: (1) send a copy of process to the commissioner by certified mail or leave at copy at the commissioner's office; (2) "send[] notice of the service and a copy of the process by certified mail to the defendant . . . at the last known address"; and file an affidavit of compliance "on or before the return day of the process, if any, or within further time as the court allows."  *Id.*

---

[7] To the extent that it could be argued that some of Plaintiff's claims fall under Minnesota's statutes governing the regulation of insurance trade practices and unfair methods and/or deceptive acts and practices in the insurance industry, these statutes govern the *business* of insurance, e.g., between and among insurers and between insurers and the insured, not the *employment* relationship between the insurer and an employee.  *See, e.g.*, Minn. Stat. §§ 72A.19-.20.

American Family argues that "[w]hile Plaintiff has filed a Certified Mail Receipt from the U.S. Postal Service, showing that something was mailed on March 30, 2011, Plaintiff has not filed any proof that the Department of Commerce received the mailing or any proof of what the mailing enclosed."  (Docket No. 25 at 5.)  Because of the latitude given to pro se litigants like Plaintiff and in light of the fact that, at this stage, Plaintiff need only establish prima facie evidence that service of process occurred, the Court assumes for purposes of this motion that Plaintiff sent the Amended Complaint to the commissioner of commerce via certified mail as stated in his supplemental memorandum. (*See* Docket No. 23 at 2.)  However, Plaintiff does not indicate that he included a copy of the process.  *See* Minn. Stat. § 45.028, subd. 2.  Further, there is no proof in the record that the commissioner of commerce received Plaintiff's mailing.  The "Track & Confirm" e-mails only show delivery of mailings to Madison, Wisconsin, not to the St. Paul, Minnesota, address Plaintiff used for the commissioner.  (*Compare* Docket No. 23-1 at 1, 3, *with* 2.)  There is also no indication that Plaintiff sent notice of any service on the commissioner to American Family.  *See* Minn. Stat. § 45.028, subd. 2.

### b.  Service Upon a Corporation Generally

Plaintiff's attempts at service of the Amended Complaint on American Family also do not comply with the general rules for service on a corporation.  Both the Federal Rules of Civil Procedure and the Minnesota Rules of Civil Procedure permit service of process to be made on a corporation's agent.  See Fed. R. Civ. P. 4(h)(1); Minn. R. Civ. P. 4.03(c).  Further, Minnesota also allows for service by mail, but an acknowledgement of service must be returned or service is not effective.  *See* Minn. R. Civ. P. 4.05.

Plaintiff contends that he sent a copy of the Summons and Amended Complaint to "the contact person the Commerce Department has on file for the Defendants, Christopher S. Spencer via American Family Mutual Insurance Company at their Madison National Headquarters address." (Docket No. 23 at 1.) The documentation submitted by Plaintiff shows that, at best, Plaintiff mailed a copy of the summons and Amended Complaint to American Family's representative. (*See* Docket Nos. 23 at 2, 23-1 at 2-3.) For service to be perfected, American Family's representative had to return acknowledgement or waiver of service. *See* Fed. R. Civ. P. 4(d); Minn. R. Civ. P. 4.05. As permitted under both the Federal Rules of Civil Procedure and the Minnesota Rules of Civil Procedure, refusal to waive service of process was an option available to American Family. *See* Fed. R. Civ. P. 4(d)(2); Minn. R. Civ. P. 4.05. Because American Family did not formally acknowledge receipt of the Amended Complaint Plaintiff had mailed, Plaintiff needed to complete service of process by other means. *See id.*

### c. Timeliness

Finally, Plaintiff was required to complete service of process within 120 days after the Amended Complaint was filed. Fed. R. Civ. P. 4(m). Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* The Amended Complaint was filed on March 30, 2011, and therefore had to be served on American Family on or before July 28, 2011. Consistent with Rule 4(m), this Court

23

issued an order on September 14, 2011, reminding Plaintiff of the consequences for failure to prosecute this action. (Docket No. 5 at 2; *see also* Docket No. 21 at 2.)

Because Plaintiff did not perfect service of process on American Family within the time prescribed by Fed. R. Civ. P. 4(m), this Court recommends that the motion to dismiss for insufficient service of process be granted with respect to American Family. *See Hinz v. Wash. Mut. Home Loans*, No. 03-3203 (DWF/JGL), 2004 WL 729239, at *2 (D. Minn. Apr. 2, 2004) (granting motion to dismiss based on lack of proper service notwithstanding plaintiffs' pro se status as "the Court is obligated to uphold the rights and protections afforded Defendants when those Defendants are brought before this Court").

## 2. Service of Process Upon Individuals

Rule 4 of the Federal Rules of Civil Procedure likewise permits service on individuals in a manner authorized by the law of the state where the district court is located. Fed. R. Civ. P. 4(e)(1). Both the Federal Rules of Civil Procedure and the Minnesota Rules of Civil Procedure allow for service to be made on an individual by (1) personal delivery, (2) leaving a copy with at the defendant's resident with a person of suitable age and discretion living therein, or (3) authorized agent. *See* Fed. R. Civ. P. 4(e)(2); Minn. R. Civ. P. 4.03(a). Similarly, under the Minnesota Rules of Civil Procedure, individuals can also be served by mail provided that the acknowledgement of service is returned. See Min. R. Civ. P. 4.05.

Plaintiff mailed copies of the initial Complaint to Andersen, Johnson, and Spindler, requesting waiver of service of process. (*See* Docket No. 23 at 1; *see also* Docket Nos. 15, ¶ 6, 17, ¶ 6, 18, ¶ 7.) None of them returned the waiver. (*See* Docket

Nos. 15, ¶ 6, 17, ¶ 6, 18, ¶ 7; *see also* Docket No. 23 at 1.)   Plaintiff was therefore required to perfect service of process on these individuals by other means within Rule 4(m)'s 120-day timeframe.  *See* Fed. R. Civ. P. 4(m).  The record contains no indication that Plaintiff did so.

Because Plaintiff did not perfect service of process on Andersen, Johnson, and Spindler within the time prescribed by Fed. R. Civ. P. 4(m), this Court recommends that the motion to dismiss for insufficient service of process be granted with respect to these defendants.

### 3.  Wisconsin Law

Rule 4 also allows service to be made according to the law of the state in which service is made.  Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  In this case, service on all Defendants was to be made in Wisconsin.

"In order for a Wisconsin court to exercise personal jurisdiction over a defendant, service of the summons and complaint must be made in the manner provided in [Wis. Stat. §] 801.11."  *Sacotte v. Ideal-Werk Krug & Priester Machinen-Fabrik*, 359 N.W.2d 393, 404-05 (Wis. 1984).  Like Minnesota, Wisconsin requires strict compliance with statutes governing service of process.  *Dietrich v. Elliot*, 528 N.W.2d 17, 21 (Wis. App. 1995) ("Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh.").

Wisconsin prefers that service be made on a defendant personally and only allows alternative methods of service when personal service has been attempted with reasonable diligence.  *See* Wis. Stat. § 801.11(1), (5); *see also* 3 Jay E. Grenig, *Wisconsin Practice*

*Series* § 111.3 (4th ed. 2004) (*Wisconsin Practice Series*) ("Personal service is the preferred form of service because it provides the most effective means of giving notice to an interested party. Only after personal service is attempted with reasonable diligence may other forms of service be utilized."). "Personal service means actual delivery to the defendant in person." *Wisconsin Practice Series* § 111.3. The reasonable-diligence requirement "requires the pursuit of any leads or information reasonably calculated to make personal service possible." *Loppnow v. Bielik*, 783 N.W.2d 450, 454 (Wis. App. 2010) (quotation omitted). "'The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived.'" *Id.* (quoting *Haselow v. Gauthier*, 569 N.W.2d 97, 101 (Wis. App. 1997)). Wisconsin does not include service by mail as a method by which personal service can be perfected. *Sacotte*, 359 N.W.2d at 406 ("We hold that our legislature did not intend to include service by mail as a method of personal service.").

Plaintiff has not personally served any of the Defendants and there are no affidavits setting forth Plaintiff's reasonably diligent attempts at perfecting service. Further, even if this Court were to consider the information contained in the pleadings and memoranda sufficient to show reasonable diligence, Plaintiff did not employ a proper method of alternative service under Wisconsin law.

For Andersen, Johnson, and Spindler, substitute service was to be made by leaving a copy of the summons at the individual's usual place of abode with a family member over the age of 14 or an adult residing therein. Wis. Stat. § 801.11(1)(b). Should substitute service not be possible after reasonable diligence, then service is to be made by

publication *and* mailing. *Id.* § 801.11(1)(c). Plaintiff did not perfect service on the individual defendants by any of these methods. Moreover, there is no indication that any of the individual defendants has appointed an agent to accept service on his or her behalf. *See id.* § 801.11(1)(d).

For American Family, personal service is to be made "upon an officer, director or managing agent of the corporation or limited liability company," and "[i]n lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office." *Id.* § 801.11(5)(a). American Family was not personally served by any of these methods. After personal service upon a corporation has been attempted with reasonable diligence, then the summons may be served by publication *and* mailing a copy to the officer specified. *Id.* § 801.11(5)(b). Plaintiff did not serve American Family via this method either.

Service of process is also permitted upon an authorized agent. Wis. Stat. § 801.11(5)(c). While the record indicates that Plaintiff tried to serve an agent of American Family based on the information he received from the Minnesota Department of Commerce (*see* Docket Nos. 23 at 2, 29 at 3-6), Plaintiff attempted service by mail, which Wisconsin law does not permit. *Sacotte*, 359 N.W.2d at 406.

Finally, Wisconsin has special provisions governing service of process on insurance companies. Section 801.11(5)(d) provides that if the action is against an insurer, service of process can be made upon "any agent of the insurer" as defined in Wis. Stat. § 628.02. Wis. Stat. § 801.11(5)(d). Service upon an insurance agent, however,

must be made personally and "is not valid unless a copy of the summons and proof of service is sent by registered mail to the principal place of business of the insurer within 5 days after service upon the agent." *Id.* It is not clear whether any of the individual defendants would qualify as an insurance agent under Wis. Stat. § 628.02, but, in any event, none of them was personally served.

Because Plaintiff did not perfect service of process pursuant to Wisconsin law on Defendants within the time prescribed by Fed. R. Civ. P. 4(m), this Court recommends that Defendants' motion to dismiss for insufficient service of process be granted.

## V.

Defendants have also moved for dismissal under Fed. R. Civ. P. 12(b)(6). (*See* Docket Nos. 10, 14 at 16-29.) Because this Court concludes that Plaintiff has not perfected service of process on Defendants, this Court lacks personal jurisdiction over them. *See Printed Media Servs., Inc.*, 11 F.3d at 843; *Sieg*, 693 F.2d at 807. Because this Court lacks personal jurisdiction over Defendants, it is not appropriate for this Court to address Defendants' remaining arguments. *See Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (quotation omitted)); *Johnson*, 444 F.3d at 954 n.2 ("Because we hold that the district court lacked personal jurisdiction, we do not reach the merits of Johnson's Lanham Act claim. We are not empowered to issue opinions on moot questions or to declare rules of law that do not affect the case before us."); *Fischer*, 2010 WL 3283420, at *3 (Due to lack of personal

jurisdiction, "this Court has no choice but to deny [the request to rule on merits of 12(b)(6) motion] as it cannot reach the merits of Fischer's claims without a full waiver of service by defendants."); *Thao v. Deutsche Bank Nat'l Trust Co.*, No. 10-03 (RHK/JSM), 20110 WL 2292260, at *1 (D. Minn. June 3, 2010) ("First, Rule 4(m) expressly contemplates dismissal without prejudice where the plaintiff has failed to timely effect service.  Second, by virtue of that failure here, the Court lacks personal jurisdiction over Deutsche Bank.   Courts should not address claims on the merits where personal jurisdiction is lacking." (citation omitted)); *see also Kouako v. Sutton Funding*, LLC, No. 09-C-7132, 2012 WL 581179, at *6 (N.D. Ill.  Feb. 22, 2012) (declining to address arguments under Fed. R. Civ. P. 12(b)(6) due to lack of personal jurisdiction); *Arbitrage Intern. Mktg., Inc. v. Demaria*, No. 10-80399-CIV, 2010 WL 3941805, at *4 n.2 (S.D. Fla. Oct. 6, 2010) ("Because the Court finds that it lacks personal jurisdiction over Defendant, the Court does not address Defendant's additional arguments regarding service of process, failure to state a claim, change of venue, and *forum non conveniens*.").

Therefore, this Court recommends that Defendants' motion to dismiss be denied with respect to their 12(b)(6) arguments.

## VI.

"A district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power."  *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998).  "This inherent power reaches conduct both before and during litigation as long as the conduct abuses the judicial process in some manner.  A bad faith finding is specifically required in order to assess attorneys fees."  *Gas Aggregation Servs., Inc. v.*

*Howard Avista Energy, LLC*, 458 F.3d 733, 739 (8th Cir. 2006); *see also Steinlage v. Mayo Clinic Rochester*, 235 F.R.D. 668, 674 (D. Minn. 2006) ("The court has the inherent authority to sanction a party or its counsel that acts in bad faith, vexatiously, wantonly, or for oppressive reasons.  Exercise of this inherent authority requires a finding of bad faith and address conduct that constitutes willful abuse of judicial process or fraud upon the court." (quotation and citations omitted)).  "Because of the potency of inherent powers, a court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction." *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005).

This Court requested supplemental briefing on service of process based on information brought to light by Plaintiff at the hearing.  (*See* Docket No. 21.)  At the hearing, Plaintiff stated that he was willing to pay reasonable attorneys' fees for Defendants' supplemental briefing due to his failure to file the documents related to service of process.  As requested, counsel for Defendants subsequently submitted an affidavit stating that he spent 4.8 hours on the additional briefing, resulting in an additional $2,016.00 in attorneys' fees.  (*See* Docket Nos. 21, 26.)

Plaintiff's pro se status does not excuse him from following the Federal Rules of Civil Procedure and Local Rules of this Court.  *See Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (stating pro se status does not entitle litigant to disregard Federal Rules of Civil Procedure or court's local rules); *Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988) ("Pro se litigants are not excused from complying with court orders or substantive and procedural law.").   Nonetheless,

30

Plaintiff's willingness to take responsibility for his mistake is not lost on this Court.[8] There is no indication that Plaintiff's neglect was the result of bad faith, motivated by any intent to abuse the judicial process, or an attempt to defraud this Court.   Because this Court cannot conclude that Plaintiff acted in bad faith, sanctions are not warranted.

[Continued on next page.]

---

[8] The Court notes that Plaintiff filed the service-related documents the day after the hearing on Defendants' motion. (*See* Docket Nos. 20-22.)

**VII.**

For the reasons set forth above, and based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Amended Motion to Dismiss the Complaint (Docket No. 12; *see also* Docket No. 8) be **GRANTED IN PART** and **DENIED IN PART**; and

2. This matter be **DISMISSED WITHOUT PREJUDICE**.

**VIII.**

For the reasons set forth above, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' request for attorneys' fees (*see* Docket Nos. 25 at 7, 26 at 1) is **DENIED**.

Date: March  26 , 2012                    *s/ Tony N. Leung*
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          for the District of Minnesota

                                          *Oprenchak v. American Family Mutual Insurance Co. et al.*
                                          File No. 11-cv-425 (PJS/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **April 10, 2012**.

32